UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,                 :

        Plaintiff,                                                                   :

  -against-                                                                              :   No.  06 Civ. 7736 (GEL)

JAMES N. STANARD,                                                          :

        Defendant.                                                              :

------------------------------------------- x

JAMES N. STANARD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
IN LIMINE TO EXCLUDE TESTIMONY OF MICHAEL CASH,
PRECLUDE THE COURT FROM DRAWING AN ADVERSE
INFERENCE AGAINST MR. STANARD, AND
EXCLUDE CERTAIN DOCUMENTS

**I.      Introduction**

Michael Cash, formerly a defendant in this case, invoked his Fifth Amendment right not to testify shortly after he had agreed to accept an offer from plaintiff Securities and Exchange Commission (the "SEC") to settle his case.  Notwithstanding that fact, the SEC seeks to introduce his deposition testimony, which consists of nothing more than his repeated assertions of his Fifth Amendment right in response to self-serving questions posed by the SEC.  The only possible reason that the SEC could have for introducing his testimony, which is devoid of any substantive content or value, is in the hope that the Court will use it to draw an adverse inference, not against Mr. Cash, but against Mr. Stanard.  Such an inference would be fundamentally unfair and prejudicial to Mr. Stanard, in addition to being unwarranted on the facts of this case.  The testimony should be excluded pursuant to Federal Rule of Evidence ("FRE") 402 as irrelevant and pursuant to FRE 403 because its probative value is substantially outweighed by the danger of unfair prejudice.  Any request for an adverse inference should be refused.

The SEC also seeks to disregard Mr. Cash's refusal to testify – or perhaps to use it to its own advantage – in its effort to admit certain documents allegedly authored by Mr. Cash but which never have been authenticated by Mr. Cash or any other witness testifying in this case. Moreover, because Mr. Cash never will testify about them, it would be fundamentally unfair to admit them into evidence against Mr. Stanard. In addition to excluding Mr. Cash's Fifth Amendment invocations, the Court should exclude these documents pursuant to FRE 402, 403, 802 and 901.

**II.     Background**

The SEC has accused Mr. Stanard of securities fraud in connection with a single transaction executed in 2001 by RenaissanceRe Holdings Ltd. ("RenRe" or the "Company"), of which Mr. Stanard is the former Chairman and CEO. Mr. Cash is a former employee of RenRe and the underwriter responsible for the transaction at issue. He was hired by RenRe to help RenRe expand into new lines of business only a few months before the Inter-Ocean transaction that is at issue. After the Company uncovered the accounting error in 2005 during an internal investigation supported by Mr. Stanard, it promptly decided to restate. The Company alerted the SEC, which launched its own investigation. As part of that investigation, the SEC subpoenaed Mr. Cash to provide sworn testimony. When Mr. Cash, a Bermuda citizen, refused to voluntarily accept service of the subpoena, Mr. Stanard and RenRe forced him to resign.

The SEC first brought suit against Mr. Cash; Martin Merritt, RenRe's Controller and Chief Accountant; and Mr. Stanard. When it filed its Complaint, the SEC simultaneously announced a settlement with Mr. Merritt. The SEC was scheduled to depose Mr. Cash in Bermuda in August 2007, and until then neither Mr. Cash nor his attorneys had given any indication that he would assert his Fifth Amendment rights. Just prior to the scheduled

deposition, however, the SEC reached an understanding with Mr. Cash and his attorneys on the basic terms of a settlement agreement. While neither admitting nor denying liability, Mr. Cash agreed to accept a five-year officer and director bar and pay a $130,000 civil penalty. *See* Final Judgment as to Defendant Michael Cash, ECF No. 56.

Within days, the SEC took Mr. Cash's deposition. Mr. Cash invoked the Fifth Amendment in response to each substantive question posed to him by the SEC throughout his hour-and-a-half long deposition. The SEC did not require Mr. Cash to testify as part of his settlement agreement, unlike Mr. Merritt, whom the SEC required to appear and testify at trial, with the determination of any civil monetary penalty deferred. The SEC now seeks to introduce the entirety of that transcript in its case against Mr. Stanard.

### III.    Argument

The Fifth Amendment allows a witness to refuse to testify where his response might incriminate him in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 76 (1973). Though the Constitution forbids a court from drawing an adverse inference against a defendant who invokes his Fifth Amendment right in a criminal case, the trier of fact in a *civil* trial may be permitted in some circumstances to draw an adverse inference against a party who asserts his Fifth Amendment right. When appropriate, the adverse inference permits the trier of fact to assume that the answers provided would have been adverse to the witness's interest. *Baxter v. Palmigiano*, 425 U.S. 308, 317-18 (1976).

At the time Mr. Cash invoked his Fifth Amendment right during his deposition in this case, he had little reason to fear the consequences of that decision: he already had resolved his civil liability with the SEC, and therefore did not need to fear an adverse inference against him in a civil case; and he must have known that his choice to invoke the Fifth Amendment could also

not be used to draw an inference against him in a criminal case.[1]  In short, in invoking the Fifth Amendment, Mr. Cash had nothing to lose and everything to gain.  In that circumstance, it is hardly surprising that he testified as he did, but it reveals nothing about what his answers to the SEC's questions might have been had he chosen to answer them.

The SEC nevertheless apparently intends to use Mr. Cash's non-testimony to create an inference against Mr. Stanard even where it could not be used against Mr. Cash.  (Otherwise, the SEC simply could have requested a stipulation that Mr. Cash invoked his Fifth Amendment right.)  Such an inference should not be drawn here.  Even in a situation where one could draw some conclusion about Mr. Cash's refusal to answer questions, the law does not permit the inference in this case for several reasons, and here any such inference would be premised on pure speculation.

### A.     An Inference Is Not Supported By Independent Evidence

First, courts allow a negative inference only when the party seeking the inference puts forward independent evidence of *each fact* about which the party claiming the Fifth Amendment was questioned.  *See id*.  The SEC cannot meet the burden here.

The factual predicate of many of the SEC's questions has no corroboration in this record.  For example, the SEC asked: "Isn't it the case that you told Mr. Stanard about the key terms in the Inter-Ocean transaction?"  Cash Dep. at 52.  There is no evidentiary foundation – from any source – that Mr. Cash provided Mr. Stanard with that (or any other) information about the transaction; no witnesses have testified that they were present during any such conversation.  Likewise, though there is no evidence that Mr. Cash and Mr. Stanard had any conversations during the relevant timeframe, the SEC asked: "Isn't it the case that you told Mr. Stanard that there was no risk to RenaissanceRe in the Inter-Ocean transaction?"  Cash Dep. at 53.  The

---

[1] Upon information and belief, no criminal charges have been brought against Mr. Cash.

SEC's questions are uncorroborated and improper, and do not warrant an adverse inference. The Court should avoid "engag[ing] in speculative interpretation . . . to divine what a potential witness's testimony might have been and how that presumed evidence might have impacted the case." *See SEC v. Antar*, 15 F. Supp. 2d 477, 495 (D.N.J. 1998).

### B.   The SEC's Self-Serving Questions Do Not Warrant An Inference

Second, even if independent evidence exists, the law requires the Court to ensure that an adverse inference is not unduly prejudicial. The Court must consider whether there is a substantial need for the information sought, and whether there is some other, less burdensome way of obtaining it. In considering whether substantial need exists, the Court should consider whether the information would be admissible in the first instance. *See Glanzer v. Glanzer*, 232 F.3d 1258, 1287 (9th Cir. 2000).

The SEC cannot overcome this hurdle because many of the questions it posed are, in addition to being unsubstantiated, inadmissible. Even a partial review of the questions posed by the SEC demonstrates how improper and unfounded the questions were,[2] and why an inference against Mr. Stanard would be unfairly prejudicial.

- "Isn't it the case that each of the allegations in each of the numbered paragraphs of [the Amended Complaint] are true?" (Cash Dep. at 87).

- "Isn't it the case that Mr. Stanard, RenRe's former CEO supervised your work on the Inter-Ocean transaction?" (Cash Dep. at 49).

- "Isn't it the case that you told Mr. Stanard that RenaissanceRe would get its money back in the Inter-Ocean transaction?" (Cash Dep. at 53).

---

[2] Defendant also submitted separate objections to individual questions posed by the SEC.

- "Isn't it the case that you knew, in 2001, that the Inter-Ocean transaction was designed to look like an assignment and reinsurance transaction, but in fact not to transfer any risk to RenaissanceRe's counter-party?" (Cash Dep. at 7-28).

- "Isn't it the case that the Inter-Ocean transaction was a sham?" (Cash Dep. at 28).

The mere fact that Mr. Cash refused to answer such questions does not reveal anything about Mr. Stanard's culpability, and an inference against Mr. Stanard based on such questioning would be unfair.

### C. The Relationship Between Mr. Cash and Mr. Stanard Does Not Support an Inference

Even if the SEC's questioning weren't so improper, and the result of an inference so unjust, the inference should not be drawn because the SEC cannot satisfy the guidelines articulated by this Circuit for an adverse inference against another person. Because of the inherent prejudice of drawing an adverse inference as a result of a non-party witness's invocation of the Fifth Amendment, and the attenuated connection between one person's invocation and the question of another person's culpability, courts are to be guided by four non-exclusive factors: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997).

The first factor requires the Court to consider the relationship between the parties, namely the loyalty that the non-party witness has toward the party. "The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order the damage the relationship." *Id.* at 123. The second factor is whether the SEC has independent evidence of a close relationship between the parties, something more akin

to agency.  *See id.* at 121; *United States v. Certain Real Prop. and Premises known as: 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 84 (2d Cir. 1995).  The SEC must show a level of control so significant "that it amounts to the equivalent of a conspiracy, joint venture, or a de facto agency relationship."  *Cowans v. City of Boston*, 2007 U.S. Dist. LEXIS 215, at n.6 (D. Mass. Jan. 4, 2007).  The third factor is whether Mr. Cash's assertion of the privilege advances both his ***and*** Mr. Stanard's interest in the outcome of the litigation.  *Libutti*, 107 F.3d at 123.  Finally, the Court should consider whether Mr. Cash was a key figure in the litigation.  *See id.*

No evidence exists of any particularly special relationship between Mr. Cash and Mr. Stanard, much less the "close bond" necessary to adversely infer guilt toward Mr. Stanard as a result of Mr. Cash's failure to testify.  The only relationship the SEC can establish between the two is that Mr. Cash was an employee of RenRe, reporting directly to someone else, at the time that Mr. Stanard was CEO.  When the transaction in question was negotiated, Mr. Cash had been at RenRe only a few months, and there is no evidence that he and Mr. Stanard had any pre-existing relationship.

Although courts sometimes may allow an inference against a *corporation* where one of its employees refuses to testify, this is justified on the basis that, as an agent of the corporation, the refusal of an employee to testify can be seen "as vicarious admissions of [the] former employer."  *Brink's*, 717 F.2d at 700.  The SEC, however, is pursuing a fraud claim against Mr. Stanard in his individual capacity, not against the Company.  There is no employment or agency relationship between Mr. Cash and Mr. Stanard.

Absent proof of a close, controlling relationship between Mr. Stanard and Mr. Cash, no negative inference is warranted.  If anything, the fact that Mr. Cash at one time was a co-defendant in this case but then settled and invoked his Fifth Amendment rights only highlights

the lack of a sufficiently close or controlling relationship between him and Mr. Stanard. It also highlights that Mr. Cash's interests are not aligned with those of Mr. Stanard, another factor to be considered. Where former co-defendants invoke the privilege during the course of the proceedings, "it can just as easily be inferred that the witnesses' refusal to answer questions was consistent with their desire to protect only their interests, without regard to [the Defendant's]." *In re Worldcom, Inc.*, 377 B.R. 77, 110 (Bankr. S.D.N.Y. 2007). There is no evidence that Mr. Cash, by settling and invoking his Fifth Amendment right, was doing anything more than protecting his own interests, which have nothing to do with Mr. Stanard's culpability. *See id.*; *see also Banks v. Yokemick*, 144 F. Supp. 2d 272, 290 (S.D.N.Y. 2001).[3]

Even assuming the SEC were able to show a close and controlling relationship, and it cannot, it still must submit independent corroborating evidence to substantiate each specific fact about which Mr. Cash refused to answer questions before an adverse inference can be allowed based on his silence. *Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648, 653 (S.D.N.Y. 1990); *United States v. Incorporated Village of Island Park*, 888 F. Supp. 419, 432 (E.D.N.Y. 1995); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000). Apart from the SEC's conclusory allegations, which are parroted in the questions they posed to Mr. Cash, there is no evidence that Mr. Stanard and Mr. Cash conspired to commit fraud with respect to the Inter-Ocean transaction. The SEC cannot fall back upon its own allegations to justify holding Mr. Cash's silence against Mr. Stanard. If mere allegations are substituted for independent proof, the trial of Mr. Stanard would become a mockery.

---

[3] Any argument by the SEC for an adverse inference against Mr. Stanard gains no support from Mr. Cash's decision to settle, and not continue to fight, the claims against him. Defendants settle for many reasons, including the desire for finality and personal economic concerns, such as considerable defense costs that they may or may not be able to afford. There is no record of why Mr. Cash chose to settle. Even assuming he settled through some sense that he had done something improper, nothing in the record links him to Mr. Stanard in this regard.

The Court should not permit the SEC to accomplish through the rarely invoked means of an adverse inference what it has been unable to accomplish through direct testimony or evidence throughout four years of investigation and litigation. The SEC premises its pursuit of Mr. Stanard almost entirely on the testimony of Mr. Merritt, who claims that he thought the Inter-Ocean transaction was improper. Yet Mr. Merritt admittedly never had a one-on-one conversation with Mr. Stanard about the Inter-Ocean transaction, let alone its accounting. No other witness supports Mr. Merritt's theory or provides evidence that Mr. Stanard knew the accounting was wrong, let alone intentionally wrong. To the contrary, many witnesses offer testimony inconsistent with the SEC's theory of Mr. Stanard's involvement. This case should rise or fall on the testimony of the witnesses, not unwarranted legal fictions.

### D. Inadmissible Documents

Compounding the potential prejudice to Mr. Stanard, the SEC also seeks to introduce en masse numerous emails and other documents purportedly authored or received by Mr. Cash. Mr. Cash has never testified as to these documents and therefore, if they are admitted, they can be interpreted only through guesswork and speculation.

Many of these emails and memoranda were exchanged among persons whom the SEC is not offering as witnesses (Exs. 14, 16, 24, 25, 135, 205, 209), and therefore not a single person in this case has personal knowledge of them. Still others apparently were authored by Mr. Cash, and though delivered to others who are expected to testify in this case, still require guesswork as to Mr. Cash's meaning. (Exs. 15, 23, 26). Three of the Cash exhibits apparently pertain, not to the transaction at issue here, but to other transactions (Exs. 15, 16, 23). The SEC hopes to suggest that whatever Mr. Cash wrote in those communications about other potential transactions that never came to fruition also must apply to this transaction.

As with Mr. Cash's testimony, the SEC hopes to offer these unexplained communications in lieu of actual testimony so that it may avoid cross-examination and the risks that it poses: that Mr. Stanard will be able to establish, through witness testimony, that the SEC's premise is false. Should the documents be admitted, Mr. Stanard will be denied the right to question Mr. Cash about the meaning of his words, his reasons for creating them, and the context of their creation, leaving the parties to engage in conjecture without any necessary context or foundation, all in violation of the rules prohibiting inadmissible hearsay. Exhibits 14, 15, 16, 23, 24, 25, 26, 135, 205, and 209 should be excluded.

## IV. Conclusion

For the foregoing reasons, defendant James N. Stanard requests that this Court reject the SEC's effort to introduce Mr. Cash's deposition testimony and rule that no adverse inference may be drawn against Mr. Stanard as a result of Mr. Cash's invocation of his Fifth Amendment right. Mr. Stanard further requests that the Court exclude from evidence Exhibits 14, 15, 16, 23, 24, 25, 26, 135, 205, and 209.

Dated:  New York, New York
        August 22, 2008

Of Counsel:

Paul R. Grand (PG 9144)
Morvillo, Abramowitz, Grand, Iason,
Anello & Bohrer, P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

(*Admitted *pro hac vice*)

DLA PIPER US LLP

By:  /s/ John J. Clarke, Jr.
     John J. Clarke, Jr. (JC 3449)

1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500

James D. Mathias*
Stacie E. Tobin*
Melissa Rubin Roth (MR 7269)
Megan H. Baer*
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

Attorneys for Defendant James N. Stanard